FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 26, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JORDAN N. B., 

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:18-CV-03156-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No. 17).

## JURISDICTION

Jordan N. B., Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on April 1, 2014. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on April 25, 2017, before Administrative Law Judge (ALJ) Robert F. Campbell. Plaintiff testified at the hearing, as did Vocational Expert (VE) Erin Hunt. On June 1, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her application for SSI benefits, Plaintiff was 22 years old, and at the time of the administrative hearing, she was 25 years old. She has a high school education, but no past relevant work experience.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) not providing specific, clear and convincing reasons for discrediting Plaintiff's testimony regarding her symptoms and limitations; 2) failing to provide adequate reasons for rejecting the opinions of examining medical sources; 3) failing to find the Plaintiff's severe mental health impairments meet or equal a listed impairment; and 4) failing to provide adequate reasons for rejecting the lay witness statement of Plaintiff's mother.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: depression, social phobia and migraines; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can do simple routine work with occasional contact with supervisors and coworkers, but no teamwork or collaboration, and no public contact; and 4) Plaintiff's RFC allows her to perform jobs existing in significant numbers in the national economy, including machine packer, assembler, and inspector/hand packer. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). . The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 416.913(d). In order to discount the opinion of a non-acceptable medical source, the ALJ must offer germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

The ALJ gave "great weight" to the opinions of the non-examining State agency consultants. (AR at p. 22). Although they opined that Plaintiff is limited to occasional public/coworker interaction, the ALJ determined that in light of Plaintiff's anxiety and depression, she should have no public contact, be limited to occasional contact with supervisors, and should avoid work involving teamwork or collaboration. (*Id.*).

Kordell N. Kennemer, Psy. D., reviewed the record in conjunction with the initial denial of Plaintiff's claim. He offered his opinion regarding Plaintiff's mental RFC on October 23, 2014, after reviewing records from May 2014 through October 2014. It is not apparent whether any of that evidence included a formal psychological or psychiatric examination. (AR at pp. 97-98; 101-103).

Jan L. Lewis, Ph.D., reviewed the record in conjunction with the reconsideration denial of Plaintiff's claim. She offered her opinion regarding Plaintiff's mental RFC on April 8, 2015, after reviewing additional evidence from December 2014 through March 2015. (AR at pp. 107-109; 113-15). This additional evidence included records from Central Washington Comprehensive Mental Health (CWCMH) dated March 3-4, 2015, and an opinion from Carol Jurs, M.A., of CWCMH dated January 27, 2015. Dr. Lewis determined this opinion, from a non-acceptable medical source, was not supported by other medical evidence in the file. (AR at p. 113).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

While Dr. Lewis appears to have reviewed the December 3, 2014 diagnoses by Daniel McCabe, M.D., and some of the results of the mental status exam he conducted as part of his psychiatric evaluation of the Plaintiff (AR at p. 110), she did not refer specifically to Dr. McCabe nor address the limitations opined by him at that time. Dr. Lewis did not weigh Dr. McCabe's opinion like she weighed the opinion of Carol Jurs.

Based on his clinical interview and mental status examination of the Plaintiff, Dr. McCabe found the following mental health symptoms affected Plaintiff's ability to work: social anxiety, daily, severe; symptoms of depression including anhedonia, poor concentration, self-persecutory thoughts, daily, moderate; chronic suicidal thoughts, daily, moderate; and self-injurious behaviors, daily, moderate. (AR at p. 357). He noted that Plaintiff engages in chronic picking at her breasts or legs and that she had "a large unhealing wound on her face which is apparently also from chronic picking." (*Id.*). Dr. McCabe diagnosed the Plaintiff with social phobia and major depressive disorder, recurrent and moderate. (AR at p. 358). He opined that Plaintiff had a "[s]evere to moderate impairment in social and occupational functioning" with a "marked" limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; a "marked" limitation in her ability to adapt to changes in a routine work setting; a "severe" limitation in her abilities to ask simple questions or request assistance and communicate and perform effectively in a work setting; a "marked" limitation in her ability to maintain appropriate behavior in a work setting; and a "marked" limitation her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. (*Id.*).

Dr. McCabe's prognosis was that Plaintiff would be impaired for 18 months with available treatment and that vocational training or services would minimize or eliminate barriers to employment. (AR at p. 358). He opined that Plaintiff would

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

benefit from psychiatric evaluation and treatment and although she had some trial runs with antidepressants, he thought she had likely not engaged in full psychiatric treatment because of her social anxiety. (*Id.*). He further opined that Plaintiff would benefit from individual counseling with cognitive behavioral therapy to work on techniques to deal with her social anxiety. (*Id.*).

In January 2015, Plaintiff began a course of treatment and counseling with CWCMH that would last for the better part of two years. Her initial assessment on January 26-27, 2015 at CWCMH was by Carol Jurs, M.A., a licensed mental health counselor (LMHC). Jurs opined that a vocational assessment was not appropriate at this time as the Plaintiff was "not prepared to be in the workforce," noting Plaintiff could not "handle stress at this point" as evidenced by her having a job at a fast food restaurant which lasted a mere two days. (AR at p. 374). Jurs diagnosed the Plaintiff with Dysthymic Disorder and Major Depressive Disorder. (AR at p. 373).

While Plaintiff missed a couple of appointments at CWCMH after her initial assessment, she started therapy on March 19, 2015 and was seen on a regular basis there until October 2016.

Dr. McCabe conducted a second psychiatric evaluation of the Plaintiff on October 18, 2016. Plaintiff told him that things remained largely unchanged for her and that she had multiple unhealed wounds on her chest. Dr. McCabe observed that there were "noticeable wounds" on the Plaintiff's face. (AR at p. 382). Plaintiff indicated her sessions at CWCMH were "helpful" and that they were "working on exposing her to more social situations." According to Dr. McCabe's evaluation:

> [Plaintiff's] proud to report that she can now sit outside on her porch for up to 10 to 20 minutes a day, and even converses with the neighbors. She'd like to keep working on improving her social interaction; perhaps getting a volunteer position at a shelter and walking dogs, and hopes to eventually have a job. She feels that the biggest impediment to this is the lack of motivation, feeling tired all the time, and being anxious about being out in public.

(AR at p. 383).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 8**

Dr. McCabe's diagnosis was major depressive disorder, recurrent and moderate; social anxiety disorder; and Cluster A and Cluster C personality traits.[1] (AR at p. 383). He indicated that mental health symptoms affecting Plaintiff's ability to work included: social anxiety, daily and severe; symptoms of depression including anhedonia, poor concentration, self persecutory thoughts, daily and moderate; self injurious behaviors, daily and moderate. (AR at p. 383).

This time around, Dr. McCabe opined that Plaintiff had a "severe" limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; a "severe" limitation in her ability to adapt to changes in a routine work setting; a "marked" limitation in her abilities to ask simple questions or request assistance and communicate and perform effectively in a work setting; a "severe" limitation in her ability to maintain appropriate behavior in a work setting; and a "severe" limitation her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. (AR at p. 384). Notwithstanding the counseling Plaintiff had received at CWCMH in the interim, Dr. McCabe believed Plaintiff's limitations had increased in four areas and diminished in two of these areas, although only slightly from "severe" to "marked." Dr. McCabe estimated Plaintiff would be would be impaired for 18 months with available treatment, but this time opined that vocational training or services would not minimize or eliminate barriers to employment. (*Id.*). According to the doctor:

---

[1] Cluster A personality disorders are characterized by odd, eccentric thinking or behavior. Cluster C personality disorders are characterized by anxious, fearful thinking or behavior. https://www.mayoclinic.org/diseases-conditions/personality-disorders/symptoms-causes/syc-20354463.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

> This woman is receiving psychological counseling that sounds behaviorally oriented to help expose her to situations in which she has to cope with her social anxiety. I believe this is an appropriate treatment. She is also receiving medication treatment for her symptoms, which I believe is appropriate as well. This woman with her social anxiety is going to move at her own pace. She feels that she's making progress in terms of being able to sit outside on her front porch for 10 minutes a day, does have the goal of wanting to continue to increase social exposure, and she's going to need to move at her own speed with that. She is not at the point where vocational training would be helpful as she would not be able to tolerate that level of social interaction. So I believe ongoing behavioral treatment is necessary.

(*Id.*).

Unfortunately, Plaintiff did not continue with behavioral therapy at CWCMH after November 2016, as noted by the ALJ in his decision. (AR at p. 20). At the April 2017 hearing, Plaintiff testified she had not been attending counseling recently "because of the snow and because of my depression." (AR at p. 76). She noted the closest counseling available was 10 to 20 miles away from where she lived and indicated she was trying to get in to counseling again. (AR at pp. 76-77).

The ALJ gave little weight to Dr. McCabe's opinions for the following reasons:

> They are based primarily on the claimant's self-report of symptoms and limitations, which are not consistent with the treatment record. For example, she told Dr. McCabe in October 2016 that she had been down for the last few months with depression, with only an occasional good day. [Citation omitted]. However, in November 2016, she reported most of her days were okay, with a few bad days. [Citation omitted]. The claimant indicated to Dr. McCabe she had progressed only to the point she could sit outside for 10 to 20 minutes. However, records reflect that she was able to attend a sewing class, spend time swimming at a park, improve her depression by singing and listening to music, volunteer at a cat rescue operation, and enroll in vocational rehabilitation services. [Citation omitted]. As noted above, mental health records reflect good response to treatment when compliant. [Citation omitted].

(AR at p. 21).

Clinical interviews and mental status examinations are objective measures that cannot be discounted as a "self-report." *Buck v. Berrryhill*, 869 F.3d 1040, 1049 (9th

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

Cir. 2017). According to the Ninth Circuit in *Buck*:

> Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as the clinician's observations of the patient. But such is the nature of psychiatry. . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

Dr. McCabe's partial reliance on Plaintiff's self-reported symptoms is not a reason to reject the doctor's opinions, especially in light of the fact that the non-examining psychologist to whose opinion the ALJ gave great weight (Dr. Lewis), did not weigh Dr. McCabe's opinion and provide any reasons for discounting it.

Dr. McCabe was obviously aware of Plaintiff's treatment with medication and notwithstanding that, offered the opinion that she "was not at the point where vocational training would be helpful as she would not be able to tolerate that level of social interaction." Around the same time as Plaintiff was evaluated by Dr. McCabe in October 2016, she was seen by psychiatrist Gregory Sawyer, M.D., at CWCMH for "medication management." She reported "significantly more difficulty with her depression" and requested an increase in her antidepressant medication. (AR at p. 428). Dr. Sawyer stated his "impression of this somewhat child-like patient is that she is not psychologically minded and will probably not benefit from other than medication," but "[o]n the other hand, chasing her with medication is likely to be at least partly futile." (AR at p. 431). Dr. Sawyer thought it was possible to alleviate some of her depression, but not all of it "since some of it appears to be almost characterological in nature." (AR at p. 432).

The ALJ noted certain some instances from March 2015, January 2016, May 2016, and July 2016, when Plaintiff had a good response to medication. (AR at p. 20). Indeed, Plaintiff even testified that things are better with medication and while there are still bad days, "it's a little better." (AR at p. 75). Nevertheless, this is not a legitimate reason to discount the October 2016 opinions of Drs. McCabe and

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

Sawyer who no doubt were well-acquainted with Plaintiff's medication treatment history.

The record shows that while Plaintiff started/attempted certain activities pointed out by the ALJ, she did not sustain or follow through on them. Records from CWCMH indicate "[t]he sewing and crocheting has not been realized since [Plaintiff's] first involvement." (AR at p. 481). While Plaintiff in May 2016 told her therapist at CWCMH that she had volunteered a "few times" at a cat shelter, she also stated there was no "set schedule yet" and there is no subsequent reference in the record showing Plaintiff's continued involvement at the shelter. (AR at p. 453). While there are references in the record to Plaintiff applying for vocational services in the spring/summer of 2016, there is nothing in the record showing that she followed through with this and actually participated in such services. Indeed, Dr. McCabe's October 2016 assessment that Plaintiff was "not at the point where vocational training would be helpful as she would not be able to tolerate that level of social interaction" clearly suggests she did not participate in vocational services. The record indicates Plaintiff went swimming at a park only one time with her mother and brother. (AR at p. 477). The limited extent of these activities is not enough to undermine the opinion of Dr. McCabe regarding Plaintiff's difficulty with social interaction. It is not a legitimate reason to discount that opinion.

Jessica Webb, a registered nurse practitioner with CWCMH, was responsible for Plaintiff's medication management during 2015 and part of 2016. (AR at pp. 447-51; 464-68; 485-89; 495-99). In December 2015, she completed a "Mental Source Statement" in which she indicated Plaintiff was "severely limited" in all areas of cognitive and social functioning, and extremely limited in maintaining social functioning, concentration, persistence and pace, such that she would be off-task over 30% of the time during a 40 hour work-week and would likely miss four or more days of work per month. (AR at pp. 379-81). The ALJ gave little weight to Webb's

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

opinion, finding it was not supported by the objective medical evidence of the record and that no findings or observations were provided to support the stated limitations. (AR at p. 22). Webb's opinion is, however, supported by the objective medical evidence of record including Dr. McCabe's clinical findings and Webb's own findings and observations as set forth in her CWCMH medication management records. (AR at pp. 447-51; 464-68; 485-89; 495-99). The ALJ did not provide a "germane" reason for discounting Webb's opinion.[2]

**TESTIMONY RE SYMPTOMS AND LIMITATIONS**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to

---

[2] Plaintiff acknowledges that Brittany Fallon, a nurse practitioner, opined primarily regarding Plaintiff's physical limitations, but indicated in August 2015 that Plaintiff would miss work due to mental health reasons. (AR at pp. 378). The ALJ gave Fallon's opinion little weight because no findings were provided to support it. (AR at p. 22). Nonetheless, Fallon's assessment is consistent with that of Dr. McCabe and ARNP Webb, and her own observations of the Plaintiff (AR at pp. 364-67; 508-16).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*.

Plaintiff's testimony about her symptoms and limitations is consistent with the opinions of Dr. McCabe and ARNP Webb regarding her symptoms and limitations. Because Plaintiff's limited activities are not a legitimate reason to discount the opinions of Dr. McCabe and ARNP Webb, they are also not a clear and convincing reason to discount Plaintiff's testimony. That Plaintiff told Dr. McCabe in October 2016 she had been down for the last few months with depression, with only an occasional good day, while in November 2016, she reported most of her days were okay, with a few bad days, is not manifestly inconsistent such as to constitute a clear and convincing reason for discounting Plaintiff's testimony.

The ALJ found Plaintiff's treatment had been "sporadic," noting she underwent a mental health assessment in March 2014, but was discharged for failure to attend further sessions. (AR at pp. 19-20). In December 2014, Plaintiff acknowledged to Dr. McCabe that she had tried counseling, but felt she was not ready for it. (AR at p. 356). Dr. McCabe opined that Plaintiff likely had not engaged in psychiatric treatment fully because of her social anxiety. (AR at p. 358). As noted above, in January 2015, Plaintiff commenced a regular course of treatment with CWCMH that lasted until November 2016. The ALJ pointed out that Plaintiff was discharged from CWCMH in January 2017 after failing to respond to a closing letter (AR at p. 20), but at her hearing, Plaintiff explained that inclement weather, her depression, and her distance from the CWCMH counseling center had created impediments for her,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

although she was trying to resume counseling there. (AR at pp. 76-77). Overall, it is not clear that Plaintiff's treatment has been "sporadic," but to the extent it has, there are valid reasons for it and therefore, it is not a clear and convincing reason for discounting Plaintiff's testimony.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id.* But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id.* at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Here, the ALJ failed to offer legally sufficient reasons for rejecting the opinions of Dr. McCabe and ARNP Webb. The ALJ also provided insufficient reasons for rejecting Plaintiff's allegations concerning her symptoms and resulting limitations. There are no outstanding issues to resolve and further administrative proceedings would not be useful.[3] The VE testified that an individual would be incapable of sustaining competitive work if she was off task 20 percent of the workday and/or missed two or more days of work per week. (AR at pp. 91-92). These limitations are consistent with the limitations opined by Dr. McCabe and

---

[3] It is not necessary to address Plaintiff's contention that she suffers from an impairment which meets or equal a listed impairment. Nor is it necessary to address Plaintiff's contention that the ALJ did not provide adequate reasons to discount statements from Plaintiff's mother (AR at p. 22), other than to note those statements are consistent with the limitations opined by Dr. McCabe and ARNP Webb, and with the Plaintiff's testimony regarding her limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

ARNP Webb. The record taken as a whole leaves no doubt that as of April 1, 2014, the Plaintiff was disabled for continuous period of at least 12 months.

The court would normally be reluctant to award SSI benefits to such a young person (age 25 at the time of the 2017 hearing) who has no past relevant work history and has barely attempted any type of work. The record, however, bears out that, at least through June 1, 2017, this Plaintiff was suffering from seriously debilitating social anxiety and depression that precluded her from performing any substantial gainful activity. The court hopes that Plaintiff resumed treatment in 2017 or thereafter with the goal of managing her mental health conditions well enough to allow her to engage in some type of substantial gainful activity.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 13) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 17) is **DENIED**. The Commissioner's decision is **REVERSED**.

Pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** for payment of Title XVI SSI benefits to the Plaintiff.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this ___26th___ day of June, 2019.

*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 17